**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Richard D. White, Appellant,

v.

FT Acquisitions, LLC; Commercial Food Service Repair, Inc.; and Kurt Herwald, Respondents.

Appellate Case No. 2023-000155

———————

Appeal From Greenville County
J. Derham Cole, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-192
Submitted May 1, 2025 – Filed June 11, 2025

———————

**AFFIRMED**

———————

Kimberly Truluck Thomason and Devon Marc Puriefoy, both of Truluck Thomason, LLC, of Greenville, for Appellant.

Elizabeth Cameron Edmondson and Giles M. Schanen, Jr., of Maynard Nexsen PC, of Greenville, for Respondents.

———————

**PER CURIAM:** Richard D. White appeals the circuit court's order granting summary judgment in favor of FT Acquisitions, LLC, Commercial Food Service

Repair, Inc., and Kurt Herwald (collectively, Respondents) on White's claims for breach of contract, breach of contract accompanied by a fraudulent act, fraud in the inducement, and violation of the South Carolina Uniform Securities Act of 2005, and on Respondents' counterclaims for breach of contract as to a General Waiver and Release Agreement (the General Release) and breach of contract as to a Subordination Agreement (the Subordination Agreement). On appeal, White argues the circuit court erred in granting summary judgment because (1) a different circuit court judge previously denied Respondents' motion for summary judgment on the same grounds, facts, and evidence and (2) there were genuine issues of material fact for each claim and counterclaim. We affirm pursuant to Rule 220(b), SCACR.

1. We hold the circuit court did not abuse its discretion in granting Respondents' renewed motion for summary judgment. *See Dorrell v. S.C. Dep't of Transp.*, 361 S.C. 312, 325, 605 S.E.2d 12, 18 (2004) (applying the abuse of discretion standard of review when reviewing the court's consideration of a renewed motion for summary judgment); *State v. Jones*, 416 S.C. 283, 290, 786 S.E.2d 132, 136 (2016) ("An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."); *Blyth v. Marcus*, 335 S.C. 363, 366, 517 S.E.2d 433, 434 (1999) ("A defendant can bring a subsequent summary judgment motion after his first motion had been denied."); *id.* at 367, 517 S.E.2d at 434 ("The rationale behind these cases is that the denial of a motion for summary judgment is an interlocutory decision which the trial judge can reconsider until the end of the trial."); *Dorrell*, 361 S.C. at 325, 605 S.E.2d at 18 ("That a different [circuit court] judge previously denied the motion [does] not preclude [a party] from renewing its motion once new evidence came to light."); *Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) ("The denial of summary judgment does not establish the law of the case, and the issues raised in the motion may be raised again later in the proceedings by a motion to reconsider the summary judgment motion or by a motion for a directed verdict.").

2. We hold the circuit court did not err in granting summary judgment in favor of Respondents on all claims and counterclaims. *See Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002) ("When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the [circuit] court pursuant to Rule 56(c) [of the South Carolina Rules of Civil Procedure]."); *Kitchen Planners, LLC v. Friedman*, 440 S.C. 456, 459, 892 S.E.2d 297, 299 (2023) ("[T]he moving party is entitled to summary judgment 'if the [evidence before the court] show[s] that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law.'" (alterations in original) (quoting Rule 56(c), SCRCP)); *Fleming*, 350 S.C. at 493-94, 567 S.E.2d at 860 ("When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party."); *Kitchen Planners*, 440 S.C. at 463, 892 S.E.2d at 301 ("[I]t is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013))).  First, we hold there were no genuine issues of material fact as to White's claims for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Uniform Securities Act of 2005 because these causes of action indisputably originated before White executed the General Release, and the General Release unambiguously released all of these claims against Respondents.  *See Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 710 (2014) ("The *construction* of a clear and unambiguous contract is a question of law for the court to determine."); *C.A.N. Enterprises, Inc. v. S.C. Health & Hum. Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988) ("When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense.").  The General Release stated it was to apply to "any and all actions, causes of actions, claims . . . arising out of any matter, happening, or thing" up until White executed the General Release.  It likewise stated it included "a release of any and all claims . . . whether in tort, contract or equity, under federal or state statutory or common law" and that "[i]t is the parties' intent to release all claims which can legally be released but no more than that."  This language is unambiguous and applied to all claims, not just employment claims as White asserts.  Although White argues his communication with Herwald around the time of the execution of the General Release indicated it was not intended to cover all claims, the parol evidence rule prevents extrinsic evidence from being introduced to create an ambiguity when the contract is otherwise unambiguous.  *See Beaufort Cnty. Sch. Dist. v. United Nat. Ins. Co.*, 392 S.C. 506, 525, 709 S.E.2d 85, 95 (Ct. App. 2011) ("Extrinsic evidence may not be used to create an ambiguity in an otherwise unambiguous policy."); *McGill v. Moore*, 381 S.C. 179, 188, 672 S.E.2d 571, 576 (2009) ("The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument.").  Accordingly, White released his causes of action for breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Uniform Securities Act of 2005 when he executed the General Release.

Second, we hold White's claim for fraud in the inducement of the General Release was barred by the tender back rule. As consideration for the General Release, White received $300,000 in severance payments, which he at no point returned to Respondents. *See State Farm Mut. Auto. Ins. Co. v. Turner*, 303 S.C. 99, 102, 399 S.E.2d 22, 23 (Ct. App. 1990) ("[I]t is well settled that one who seeks to avoid the effects of a release must first return or tender consideration paid therefor."); *Taylor v. Palmetto State Life Ins. Co.*, 196 S.C. 195, 199, 12 S.E.2d 708, 710 (1940) ("This rule obtains even though the contract of settlement was induced by the fraud or false representations of the other party."). Although White argues the severance payments were allocated solely to the non-compete clause in the General Release, the General Release unambiguously attached the consideration to the entirety of the agreement, not solely the non-compete clause. The release did not indicate the payments applied strictly to the non-compete clause; rather, it stated White agreed he received valuable consideration in exchange for entering the agreement as a whole. Likewise, White was not otherwise entitled to receive the severance payments under his employment agreement because he voluntarily resigned his position. *See id.* at 200-01, 12 S.E.2d at 710 (stating that an exception to the tender back rule is "where the party seeking rescission would be entitled in any event to retain the money or the property received, and admittedly due, he need not return or tender back the same as a condition precedent to relief").

Third, we hold there were no genuine issues of material fact as to Respondents' counterclaims. As to White's breach of the General Release, White agreed to release all claims against Respondents, and subsequently breached the General Release when he filed the present action. *See Williams*, 409 S.C. at 594, 762 S.E.2d at 710 ("The *construction* of a clear and unambiguous contract is a question of law for the court to determine."); *C.A.N. Enterprises*, 296 S.C. at 377, 373 S.C. at 586 ("When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense."). Although White argues the General Release only provided an affirmative defense for Respondents because it was not a covenant not to sue, this argument was not preserved because White did not raise it to the circuit court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Next, as to the breach of the Subordination Agreement, the agreement unambiguously prohibited White from filing suit to recover on his Junior Subordinated Promissory Note until the senior debt was satisfied, and White filed the present action before such occurred. Although White

argues paragraph three of the Subordination Agreement required Respondents to provide White written notice of Respondents' default before he was prohibited from filing suit, it only provided Respondents the option to pay White certain payments until it provided written notice, and it did not specifically pertain to paragraph nine, which prohibited White from commencing an action before the superior debt was satisfied. Accordingly, there were no genuine issues of material fact as to whether White breached the General Release as well as the Subordination Agreement. *See C.A.N. Enterprises*, 296 S.C. at 377, 373 S.C. at 586 ("When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense.").

**AFFIRMED.**[1]

**THOMAS, KONDUROS, and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.